UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
EASTCHESTER TOBACCO & VAPE INC.,            :
EASTCHESTER SERVICE STATION INC.,           :
EASTCHESTER SERVICE CENTER INC.,            :
CHESTNUT MARTS INC., and SCARSDALE          :
AUTO CLINIC, INC.,                          :
          Plaintiffs,                    ;
v.                                          :    **OPINION AND ORDER**
                                          :
TOWN OF EASTCHESTER, EASTCHESTER            :    21 CV 6996 (VB)
TOWN BOARD, ANTHONY S. COLAVITA,            :
JOSEPH DOOLEY, LUIGI MARCOCCIA,             :
THERESA NICHOLSON, SHEILA                   :
MARCOTTE, and TOWN OF EASTCHESTER           :
POLICE DEPARTMENT,                          :
          Defendants.                    :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiffs Eastchester Tobacco & Vape Inc. ("ETV"), Eastchester Service Station Inc. ("ESS"), Eastchester Service Center Inc. ("ESC"), Chestnut Marts Inc. ("CM"), and Scarsdale Auto Clinic, Inc. ("SAC"), bring this action against defendants the Town of Eastchester (the "Town"), the Eastchester Town Board, Anthony S. Colavita, Joseph Dooley, Luigi Marcoccia, Theresa Nicholson, Sheila Marcotte, and the Town of Eastchester Police Department. Plaintiffs allege the Town's Electronic Nicotine Delivery Product Law (the "Local Law"), which prohibits "[t]he sale, offer for sale, or distribution of Electronic Nicotine Delivery Products," is preempted by federal and state law, violates the First Amendment, and is unconstitutionally vague.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #22).

    For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

On September 3, 2019, the Town enacted the Local Law. (Doc. #21 ("Am. Compl.") ¶ 38). The Local Law prohibits "[t]he sale, offer for sale, or distribution of Electronic Nicotine Delivery Products . . . within the Town of Eastchester," Local Law § 3, and it directed all persons to "cease all sales of such products within the Town of Eastchester within six (6) months of" the Local Law's enactment. Id. § 4.

The Local Law provides it is to be enforced by the Town of Eastchester Police Department, and that "[a]ny Person who violates" the "Local Law shall be guilty of a violation punishable by a fine not exceeding $1,000.00 for each offense." Local Law §§ 5–6.

Under the Local Law, "Electronic Nicotine Delivery Products" are defined as:

> Any article or product, not including cigarettes, cigars, pipe tobacco, or chewing tobacco, made wholly or in part of a tobacco substitute or otherwise containing nicotine that is expected or intended for human consumption, but not including a tobacco substitute prescribed by a licensed physician or a product that has been approved by the United States Food and Drug Administration for sale as a tobacco use cessation or harm reduction product or for other medical purposes and which is being marketed and sold solely for that approved purpose. Electronic Nicotine Delivery Products include, but are not limited to, e-cigarettes, vapes, vaporizers, vape pens, lozenges or other candy, drinks, liquid nicotine or other e-liquids or inhalers.

Local Law § 2.

Plaintiffs are businesses within the Town that either have been cited for violations of the Local Law, have lost business because of the Local Law, or seek to sell products potentially banned by the Local Law. (Am. Compl. ¶¶ 7–11). ETV also alleges it has been cited for

offering to sell component parts of Electronic Nicotine Delivery Products, such as a coil or battery, which do not contain tobacco, a tobacco substitute, or nicotine. (See id. ¶¶ 45–48).

## DISCUSSION

I. Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

3

II.       Federal Preemption

Defendants contend plaintiffs have not plausibly alleged the Local Law is preempted by federal law.

The Court agrees.

A.       Legal Standard

The Supremacy Clause provides that federal law is "the supreme Law of the Land." U.S. Const. art. VI, § 2. Thus, "state and local laws that conflict with federal law are without effect." N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 103 (2d Cir. 2010). A plaintiff may invoke federal subject-matter jurisdiction when it alleges a local law is federally preempted and seeks injunctive and declaratory relief. Concerned Citizens of Cohocton Valley, Inc. v. N.Y.S. Dep't of Env't Conservation, 127 F.3d 201, 206–07 (2d Cir. 1997).

The relevant type of federal preemption here is "express preemption," when "Congress has expressly preempted local law." N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d at 104. "Preemption analysis is guided by the presumption that a federal statute does not displace the local law unless Congress has made such an intention clear and manifest," especially when "a locality seeks to exercise its police powers to protect the health and safety of its citizens." U.S. Smokeless Tobacco Mfg. Co. v. City of New York, 708 F.3d 428, 432 (2d Cir. 2013).

Here, plaintiffs contend the Local Law is expressly preempted the federal Family Smoking Prevention and Tobacco Control Act (the "FSPTCA"). Because plaintiffs seek injunctive and declaratory relief (Am. Compl. ¶¶ 76, 84), the Court possesses subject-matter jurisdiction over this claim. Concerned Citizens of Cohocton Valley, Inc. v. N.Y.S. Dep't of Env't Conservation, 127 F.3d at 206–07.

4

The FSPTCA empowers the Food and Drug Administration ("FDA") to regulate "[t]obacco products." 21 U.S.C. § 387a(a). This includes "all cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco," id. § 387a(b), as well as nicotine delivered by "electronic nicotine delivery systems," such as "e-cigarettes." <u>Deeming Tobacco Products to Be Subject to the Federal Food, Drug, and Cosmetic Act</u>, 81 Fed. Reg. 28,973, 28,975 (May 10, 2016). To that end, the FSPTCA permits the FDA to promulgate "tobacco product standards," which regulate, for example, additives in and nicotine yields of tobacco products. <u>See</u> 21 U.S.C. § 387g.

Section 387p of the FSPTCA includes a preservation clause, a preemption clause, and a saving clause.

The preservation clause states:

Except as provided in [the preemption clause], nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit the authority of a Federal agency (including the Armed Forces), a State or political subdivision of a State, or the government of an Indian tribe to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age, information reporting to the State, or measures relating to fire safety standards for tobacco products.

21 U.S.C. § 387p(a)(1).

The preemption clause states:

No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

21 U.S.C. § 387p(a)(2)(A).

5

The saving clause states that the preemption clause "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products." 21 U.S.C. § 387p(a)(2)(B). "In other words," the FSPTCA "distinguishes between manufacturing and the retail sale of finished products; it reserves regulation at the manufacturing stage exclusively to the federal government, but allows states and localities to regulate sales and other consumer-related aspects of the industry in the absence of conflicting federal regulation." U.S. Smokeless Tobacco Mfg. Co. v. City of New York, 708 F.3d at 434.

The Second Circuit has suggested in dicta that a municipality's "complete" sales ban of a category of tobacco products might be preempted by the FSPTCA because complete sales bans are not within the scope of the FSPTCA's saving clause. U.S. Smokeless Tobacco Mfg. Co. v. City of New York, 708 F.3d at 435–36. Proponents of this argument "point to the difference in language between the preservation clause, which refers to 'measure[s] relating to or prohibiting the sale' of tobacco products, and the saving clause, which refers only to 'requirements relating to the sale' of tobacco products." Id. at 435 (alteration in original) (quoting 21 U.S.C. § 387p(a)). That is, they contend the reference to "measures relating to or prohibiting the sale of" tobacco products in the preservation clause and the reference only to "measures relating to the sale of" tobacco products in the saving clause means "measures prohibiting the sale of" tobacco products are not covered by the saving clause. See id. The Circuit has declined to rule on this interpretation of the FSPTCA. Id.

B.     Analysis

Here, plaintiffs have not plausibly alleged the Local Law is expressly preempted by the FSPTCA.

First, there is a strong presumption against federal preemption when, "as here, a state or locality seeks to exercise its police powers to protect the health and safety of its citizens." U.S. Smokeless Tobacco Mfg. Co. v. City of New York, 708 F.3d at 432.

Second, the Local Law is a sales regulation, not a tobacco product standard. By enacting the Local Law, the Town was attempting to regulate finished tobacco products, not their manufacturing processes. For example, in U.S. Smokeless Tobacco Manufacturing Co. v. City of New York, the Second Circuit concluded a New York City ordinance that prohibited "any flavored tobacco product except in a tobacco bar" was a sales regulation, not a products standard preempted by the FSPTCA, because the City was ultimately concerned with "whether final tobacco products are ultimately characterized by—or marketed as having—a flavor," not whether the tobacco products were manufactured with additives. 708 F.3d at 434. Similarly here, the Local Law does not address the composition of Electronic Nicotine Delivery Products or how they are made, only that finished Electronic Nicotine Delivery Products are sold. As such, the Local Law "represents an exercise of local police power that Congress specifically allowed in enacting the FSPTCA, and thus it is not preempted." Id. at 436; see, e.g., Neighborhood Mkt. Ass'n v. County of San Diego, 529 F. Supp. 3d 1123, 1135–36 (S.D. Cal. 2021) (San Diego County's "temporary ban on the sale or distribution of electronic smoking devices is not a tobacco product standard").

Third, although the Local Law is a complete sales ban, the Court concludes complete sales bans are within the scope of the FSPTCA's saving clause. The saving clause provides that

"requirements relating to the sale . . . of[ ] tobacco products by individuals of any age" are not preempted by the FSPTCA.  21 U.S.C. § 387p(a)(2)(B).  The Local Law "is, simply put, a requirement that tobacco retailers or licensees" in the Town "not sell" Electronic Nicotine Delivery Products.  R.J. Reynolds Tobacco Co. v. County of Los Angeles, 29 F.4th 542, 558 (9th Cir. 2022) (upholding flavored tobacco ban by Los Angeles County); accord Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence, 731 F.3d 71, 82–83 (1st Cir. 2013) (upholding flavored tobacco ban by Providence, Rhode Island).  Further, the Court is not persuaded that the difference in language in the preservation clause and saving clause is relevant to the preemption analysis.  This is because "the preemption clause also omits the word 'prohibiting,'" which means "[i]f [plaintiffs] are correct that [the FSPTCA] draws a sharp distinction between 'prohibitions' versus mere 'requirements relating to the sale . . . of[ ] tobacco products,' then the plain text of the preemption clause itself doesn't preempt any tobacco product 'prohibitions.'"  R.J. Reynolds Tobacco Co. v. County of Los Angeles, 29 F.4th at 559 (fourth and fifth alterations in original).

Accordingly, plaintiffs' federal preemption claim (Second Cause of Action) must be dismissed.

III.     Section 1983 Claims

    A.     First Amendment

Defendants contend plaintiffs have not stated a First Amendment claim.

The Court agrees, but for reasons different than those articulated by defendants.

The First Amendment prohibits state and local governments from "abridging the freedom of speech."  U.S. Const. amend. I; 44 Liquormart, Inc. v. State of Rhode Island, 517 U.S. 484, 516 (1996).  "Speech" in the context of the First Amendment encompasses conduct that is

8

"sufficiently imbued with elements of communication." Texas v. Johnson, 491 U.S. 397, 404 (1989). To determine whether conduct is "sufficiently imbued with elements of communication," courts have considered "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." Id.

Commercial speech, such as advertising, is also protected by the First Amendment, and government regulations of commercial speech are subject to heightened scrutiny. Zauderer v. Off. of Disciplinary Couns., 471 U.S. 626, 637–38 (1985). But regulations of what businesses "must do[,] . . . not what they may or may not say," are not considered regulations of commercial speech. See Rumsfeld v. F. for Acad. & Institutional Rts., Inc., 547 U.S. 47, 60 (2006).

Here, plaintiffs do not sufficiently allege the Local Law regulates commercial speech protected by the First Amendment. The Local Law prohibits "[t]he sale, offer for sale, or distribution of Electronic Nicotine Delivery Products." The law does not attempt to regulate commercial speech by, for example, prohibiting plaintiffs from advertising accurate information about lawfully sold products. 44 Liquormart, Inc. v. State of Rhode Island, 517 U.S. at 489 (prohibition on advertising prices of legal alcoholic beverages violates the First Amendment); Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 750 (1976) (prohibition on pharmacists advertising truthful information about legally prescribed prescription drugs violates the First Amendment). The Local Law only regulates what plaintiffs "must do[,] . . . not what they may or may not say." Rumsfeld v. F. for Acad. & Institutional Rts., Inc., 547 U.S. at 60. Thus, the Local Law does not implicate the First Amendment.

Accordingly, plaintiffs' First Amendment claim (Fourth Cause of Action) must be dismissed.

B.       Fourteenth Amendment

Defendants contend plaintiffs' Fourteenth Amendment claim must be dismissed because they do not plausibly allege the Local Law is void for vagueness.

The Court agrees.

The Due Process Clause of the Fourteenth Amendment requires state and local laws to "inform[ ]" the public "as to what the State commands or forbids." Melendez v. City of New York, 16 F.4th 992, 1014–15 (2d Cir. 2021). Laws that fail to do so are "void for vagueness." Kolender v. Lawson, 461 U.S. 352, 357 (1983). "[L]aws imposing civil penalties" are subject to "less demanding scrutiny than those with criminal consequences or those implicating constitutional rights." Melendez v. City of New York, 16 F.4th at 1015.

A law can be void for vagueness "for either of two independent reasons": (i) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"; or (ii) "it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000).

Statutes that "do[ ] not implicate First Amendment rights" are "assessed for vagueness only as applied, i.e., in light of the specific facts of the case at hand and not with respect to [their] facial validity." United States v. Rybicki, 354 F.3d 124, 129–30 (2d Cir. 2003) (collecting cases). In other words, a plaintiff whose conduct "is clearly proscribed" by a law "cannot complain of the vagueness of the law as applied to the conduct of others." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982).

As an initial matter, the Local Law does not implicate the First Amendment, and thus may only be assessed for vagueness "as applied" to plaintiffs. United States v. Rybicki, 354 F.3d at 129–30. Plaintiffs ESS, ESC, CM, and SAC seek to sell products proscribed by the Local

Law (see Am. Compl. ¶¶ 8–11), and thus cannot raise a void-for-vagueness challenge. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. at 495. ETV, however, asserts it was cited for offering for sale component parts of e-cigarettes and vaporizers that do not contain tobacco, a tobacco substitute, or nicotine (see Am. Compl. ¶¶ 46–47), which are not clearly proscribed by the Local Law. Thus, ETV may raise an as-applied challenge to the Local Law.

Here, ETV has not plausibly alleged the Local Law is void for vagueness as applied to its sale of these component parts.

First, ETV has not plausibly alleged the definition of Electronic Nicotine Delivery Products "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." Hill v. Colorado, 530 U.S. at 732. Specifically, ETV has not plausibly alleged the Local Law can be construed to reach the sale of component parts of Electronic Nicotine Delivery Products that do not contain tobacco, tobacco substitute, or nicotine.

The Local Law's definition of Electronic Nicotine Delivery Products includes two parts: the second part is an illustrative list of examples—"including, but not limited to, e-cigarettes, vapes, vaporizers, vape pens, lozenges or other candy, drinks, liquid nicotine or other e-liquids or inhalers"—and the first part limits the definition to products "made wholly in part of a tobacco substitute or otherwise containing nicotine." In other words, the Local Law defines Electronic Nicotine Delivery Products as any products such as "e-cigarettes, vapes, vaporizers, vape pens, lozenges or other candy, drinks, liquid nicotine or other e-liquids or inhalers" that are "made wholly in part of a tobacco substitute or otherwise containing nicotine."

Statutes must be construed as to "give force and effect to each of its provisions rather than render some of them meaningless," Allen Oil Co. v. Comm'r, 614 F.2d 336, 339 (2d Cir.

11

1980), and to interpret the Local Law to reach products not "made wholly in part of a tobacco substitute or otherwise containing nicotine" renders the first part of the definition meaningless. Further, even if the "including, but not limited to" language in the second part of the definition introduces some ambiguity into the Local Law, it is permissible ambiguity considering the Local Law only imposes civil penalties and does not implicate the First Amendment. See Melendez v. City of New York, 16 F.4th at 1015. Moreover, general terms in statutes followed by a list of specific items are "to be construed to embrace only objects similar to those enumerated" in the list, City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 402 (2d Cir. 2008), which means "include, but not limited to" should be construed to cover objects similar to "e-cigarettes, vapes, vaporizers, vape pens, lozenges or other candy, drinks, liquid nicotine or other e-liquids or inhalers," not "Snickers candy bars and Coca-Cola" as plaintiffs suggest. (Doc. #31, at 7).

Second, ETV has not plausibly alleged the Local Law authorizes arbitrary enforcement. ETV alleges it was cited on one occasion for selling a component part not covered by the Local Law, but this goes to the validity of ETV's citation, not whether the law is unclear. See, e.g., In re N.Y.C. Policing During Summer 2020 Demonstrations, 548 F. Supp. 3d 383, 416 (S.D.N.Y. 2021) (law enforcement officers' failure to comply with procedures set forth in curfew orders go to whether plaintiffs were properly arrested for violating the curfew orders, not whether the curfew orders were unconstitutionally vague). ETV also does not plausibly allege a "practice was so persistent or widespread as to constitute a custom or usage with the force of law" sufficient to state a claim against the Town or any of its employees in their official capacity. Green v. Dep't of Educ., 16 F.4th 1070, 1077 (2d Cir. 2021) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692–94 (1978)). In addition, defendants appear to concede the sale of

component parts is not prohibited by the Local Law. (See Doc. #34, at 6 (noting plaintiffs "allege they have been ticketed for conduct not prohibited by the Local Law")).

Accordingly, plaintiffs' void-for-vagueness claim (Fifth Cause of Action) must be dismissed.[2]

IV. Remaining Claims

The Court dismisses plaintiffs' remaining claims for lack of subject matter jurisdiction.

A. Legal Standard

Federal courts have an independent obligation to determine whether subject matter jurisdiction exists even when no party challenges it. See Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006).

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for jurisdiction. Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752–53 (2d Cir. 1996). In the absence of such an independent basis, a declaratory judgment claim must be dismissed. Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769–70 (2d Cir. 2006) (per curiam).

---

[2] Plaintiffs' Sixth Cause of Action is styled "Violation of 42 U.S.C. § 1983." (Am. Compl. at 26). To the extent plaintiffs attempt to assert a standalone Section 1983 claim, it must be dismissed. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

Rule 65 of the Federal Rules of Civil Procedure, which outlines the procedure for district courts to issue preliminary injunctions or temporary restraining orders, also does not provide an independent basis for jurisdiction.  See Ali v. Barr, 464 F. Supp. 3d 549, 556 (S.D.N.Y. 2020).

B.     Analysis

Here, plaintiffs' remaining substantive claims—that the Local Law is preempted by New York law (Third Cause of Action) and is void for vagueness pursuant to the Due Process Clause of the New York State Constitution (Seventh Cause of Action)—arise under state law.  To the extent plaintiffs seek declaratory judgment on these claims (Am. Compl. ¶¶ 98, 140), the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction. Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d at 769–70.  In addition, although plaintiffs style their claim for injunctive relief as an independent claim (First Cause of Action), Rule 65 also does not provide an independent basis for federal jurisdiction.  Ali v. Barr, 464 F. Supp. 3d at 556.

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims. See Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997))).

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is directed to terminate the motion (Doc. #22) and close this case.

Dated: August 1, 2022
      White Plains, NY

                                      SO ORDERED:

                                      Vincent L. Briccetti
                                      United States District Judge